Jones vs. Kolb and others.

## JONES vs. KOLB and others.

*November 21 — December 12, 1882.*

VILLAGES: TAXATION: CONSTITUTIONAL LAW. *(1) Electors of village cannot vote for town officers. (2) Assessment of taxes in villages. (3) Ch. 40, R. S., constitutional.*

1. Villages organized under ch. 40, R. S., are separate and independent municipal corporations; and a resident and elector of such a village cannot vote for town officers at the town meetings of the town within the limits of which the territory composing the village was formerly situated.
2. The tax-payers of a village have no inherent right to have the assessment or collection of their taxes done by an officer elected by them, and a law providing that such duties shall be performed by town officers is not unconstitutional.
3. Ch. 40, R. S., while it is not perfect in all the details which should fix the relations between the village and town, is not so imperfect as to render it void for uncertainty or obnoxious to any constitutional inhibition; nor does it violate the rule requiring uniformity in the system of town and county government. Const., art. IV, sec. 23.

APPEAL from the Circuit Court for *Brown* County.

Action against the inspectors of an election for town officers in the town of Depere to recover damages for their wrongful and unlawful refusal to permit the plaintiff to vote at such election. A demurrer to the complaint upon the ground, among others, that the facts stated did not constitute a cause of action was sustained, and from the order sustaining the same the plaintiff appealed.

The cause was submitted for the appellant on the brief of *Vroman & Sale.* They argued, *inter alia,* that a village organized under ch. 40, R. S., remains a part of the town in which it is situated, and its citizens are entitled to participate in all town meetings. For the exercise of certain important powers such village is wholly dependent upon the town organization. (1) It has no assessor, either by election

(sec. 875, R. S.) or by appointment (subd. 7, sec. 892, R. S.). And no such office being provided for by law, the village cannot create the office or fill it by election or appointment. 1 Dillon on Munic. Corp., 233; *Hoboken v. Harrison*, 1 Vroom, 73. (2) The assessment of property in the village, for taxation, must be made by the assessor of the town. R. S., secs. 913, 1030, 1045, 1049, 1060. (3) All taxes must be collected by the town treasurer. The village treasurer is merely a disbursing officer, with power to collect poll-tax only. R. S., secs. 903, 907, 914, 915, 923, 1004. (4) Such village is not a separate election precinct, unless made so by the town board. R. S., secs. 15, 18, 20. (5) The relation of the village and town is further shown by secs. 910, 997, 1562, R. S. If residents of the village may not vote for town officers, their property may be assessed, the assessment equalized, taxes levied, collected and disbursed, and other powers exercised over them, and concerning municipal matters in which they have a direct and equal interest with residents of the town, by officers in whose selection they have no voice. The fact that the town meeting and village charter election cannot be held on the same day is an indication that the villagers are expected to attend town meeting. R. S., secs. 792, 871. See, also, *State ex rel. Halsey v. Ward*, 17 Ohio St., 544.

*W. J. Lander*, for the respondents.

TAYLOR, J. This action is brought to determine the question of the right of an elector of the village of West Depere to vote at a town meeting in the town of Depere for town officers. The complaint shows that said village was originally a part of said town. For the purposes of this appeal we shall take it for granted that by the proceedings set out in the complaint the original village of West Depere, which was organized under a special act of the legislature passed in 1857, was duly incorporated as a village under the provisions of sec. 852, R. S. 1878. Treating the village of

West Depere as a village duly incorporated under the provisions of ch. 40, R. S. 1878, the question to be determined on this appeal is this: "Is a resident and elector of said village authorized to vote for town officers at the town meetings of the town within the limits of which the territory now composing the village was formerly situated?"

This question, we think, must be answered in the negative. We think it was the undoubted intention of the legislature in enacting ch. 40, R. S. 1878, prescribing the manner of organizing villages within this state, and defining the powers, duties, and privileges which such villages so organized should have, exercise, and enjoy, that when so organized they should be separate and independent municipal corporations. Sec. 854 declared that "any part of a town or towns not less than one square mile in area, and not included in any village, and lying in the same county, which shall contain a resident population of at least 500 persons, and not less than 300 persons to every square mile thereof, may, upon compliance with the conditions of this chapter, become incorporated as a village by such name as shall be designated in the order of the court for its incorporation, with the ordinary powers of a municipal corporation, and such as are conferred by these statutes." A village organized under ch. 40, R. S., is authorized to elect all the officers necessary for the administration of its local affairs as fully as any town in the state, except an assessor. It has a supervisor to represent it in the county board, a president and board of trustees with the ordinary powers of a board of supervisors in the town and many other powers not delegated to such town board, and a clerk to record the proceedings of the board and take care of its records. It has a justice of the peace and a police justice to administer justice within its limits, a constable and marshal to execute the processes of its local courts, and a village attorney to prosecute actions in behalf of the village and defend the

village in actions brought against it, one or more commissioners to look after and keep in repair its streets, and a treasurer to keep and disburse its funds.

It is clear, we think, that secs. 909, 910 and 911, as amended by ch. 108, Laws of 1881, prohibited the town within whose limits the territory comprising the village may have been, from levying a tax upon the village property for the purpose of improving the streets therein. The village is liable for damages occasioned by any defect in its streets, the same as the town for the defects of highways within its limits, and the town is expressly exempted from liability for the defects in village streets. The only right retained by the town, or duty imposed on it, is to build the bridges within the village, and for the purpose of building such bridges it may have the right to raise a tax upon all the property of the town and village; but this fact does not seem to be sufficient to uphold the claim of the elector of the village to vote for the officers of the town. The villages organized under said ch. 40 are in many places in the statutes recognized as municipalities, separate and independent of the town in which they are situated. When highways are to be laid out on the line of such village and the adjoining town, the same proceedings are to be taken as if the same were laid out on the line of two adjoining towns. Sec. 1274, R. S. High schools may be established therein the same as in towns. Sec. 490, R. S. General elections for state and county officers must be held in such villages. Secs. 13, 14, 19, R. S. These sections were amended by the revised statutes of 1878, to correspond with the other provisions of law authorizing the incorporation of villages, and at the last election a constitutional amendment was adopted authorizing the legislature to require the registration of electors in villages as well as cities.

It is true that in sec. 26, R. S. 1878, the following language is used: " The mayor of every city, and the president of every village, except such cities and villages as are joined to

towns for state and county elections, shall nominate," etc. We think it very clear that this exception was not intended to include villages organized under ch. 40, R. S. The fact that the exception includes cities as well as villages, clearly shows that it is intended to apply to such villages as were incorporated by special acts, and, by virtue of the provisions of such acts, were joined to towns for state or county elections.

For the purposes of the determination of the rights of the residents of villages organized under ch. 40, R. S. 1878, it may be admitted that villages organized under ch. 70, R. S. 1858, before the enactment of the revised statutes of 1878, retained the right to vote at town elections. Under ch. 70, R. S. 1858, no village officers were elected except the president and trustees, and an assessor, and the board were authorized to elect a clerk, treasurer, and marshal. See secs. 17, 19, ch. 70, R. S. 1858. The village remained a part of the town for highway purposes, and the town was expressly authorized to levy highway taxes on the property of the village, and include the village in one or more road districts. See sec. 70 of said chapter. There was no provision in that chapter making the village liable for damages occasioned by the defects or want of repair of its streets. Sec. 17 of said ch. 70, in defining the qualification of an elector at a village election, says: "Every person residing therein [that is, in the village], qualified to vote for town officers in the town in which such village, or any part thereof, is situated, may vote for all the officers to be chosen." Sec. 873, ch. 40, R. S. 1878, provides that "every qualified elector, then actually residing in such village, may vote at any election." His qualification to vote does not depend on being qualified to vote for town officers in the town in which such village is situated, as was required by ch. 70, R. S. 1858. The act of 1858 did not even declare that the village incorporated under it should be a municipal corporation, with the ordinary powers thereof, but was content with saying it should be

·deemed a body politic and corporate. See sec. 13, ch. 70, R. S. 1858. Previous to the revision of 1878 there was no law prescribing the method of laying out a highway between a town and a village. See sec. 138, ch. 152, Laws of 1869. A village, under ch. 70, R. S. 1858, was not authorized to borrow money on any account, See sec. 34. Under the revised statutes of 1878 villages may now borrow money and issue bonds, the same as counties and towns. Ch. 41, R. S. 1878.

The foregoing statement shows some of the changes made by the revised statutes of 1878 in respect to the powers of villages, showing that under the present statute they are greatly enlarged, and that nearly all the reasons for giving the electors of villages the power to vote at the town meetings have been removed. There are many provisions in the revised statutes of 1878 which strengthen the argument that villages organized under ch. 40, R. S. 1878, are separate and distinct municipal corporations,— as much so as the town from whose territory the village is formed. Sec. 928, R. S. 1878, provides that "any city, village, or town may be annexed to another city, village, or town contiguous, by ordinance passed by a two-thirds vote of all the aldermen, trustees, or supervisors elect of each corporation desiring annexation, ratified by an election, as herein provided." Ch. 75, Laws of 1881, which amends sec. 886 of ch. 40, provides, among other things, that when the police justice of the village is sick or absent or incapacitated, any justice of the peace of the village or *adjoining town* in the county in which such village is situated shall have jurisdiction, and may act instead of the village police justice. No distinction is made in favor of the justice of the town out of whose territory the village was formed. That town is as clearly treated as an adjoining town as any other town in the county which may adjoin the village.

Many other provisions might be cited tending to show that

the organized village is an independent municipal corporation, and as such it has not, nor have its electors, the right to intermeddle with the municipal affairs or elections of the town from whose territory it was taken. The only reason for claiming the right to vote at the town meeting is the fact that the town assessor is authorized and required to assess the property of the village for taxation for county and state purposes, and the village taxes are to be apportioned on such assessment, and collected by the town treasurer for the use of the village. But the statute is careful to provide that the property of the village shall be assessed on one continuous part of the roll (see sec. 1045, R. S. 1878), and as the village is represented on the county board by its supervisor, if any injustice is done by the town assessor in making such assessment it may be corrected there. This provision of law requiring the town assessor to place the village property assessed by him together upon the assessment roll, was first enacted as sec. 57 of ch. 188, Laws of 1872, an act entitled "An act for the incorporation of villages." That act contains nearly all the provisions of ch. 40 and ch. 41, R. S. 1878, so far as the last-named chapter relates to villages, and was undoubtedly enacted to accomplish the same change in the village organization which was continued by ch. 40, R. S. The change of language in defining the qualifications of a village elector found in sec. 21 of said ch. 188, from the language used in sec. 17, ch. 70, R. S. 1858, above quoted, is a very strong indication that the act of 1872 was intended to separate the village from the town for the purpose of elections. Sec. 21, ch. 188, provides "that all persons entitled to vote for county and state officers, and who shall have an actual residence in such village for ten days next preceding the time of holding any election therein, shall be entitled to vote for any officer under this act."

This provision as to the assessment of village property by the town assessor and the collection of the taxes by the town

treasurer was undoubtedly intended to simplify the collection of the village taxes, and in some manner relieve the village of the machinery of collecting taxes. If the legislature has made a mistake in this matter, and it is deemed an injustice to the villages organized under the general law, the remedy is to apply to the legislature for the proper relief. The tax-payers of a village have no inherent right to have the assessment of their property made by an officer elected by them, nor to have their taxes collected by such officer. The fact that the law provides that the property of the village shall be assessed by a town assessor and the taxes be collected by a town treasurer does not render the act void. It is not in conflict with any provision of the constitution. The constitution (art. XII, sec. 3) makes it the duty of the legislature to provide for the organization of cities and incorporated villages, but it does not prescribe what powers shall be granted by the legislature to such cities and villages. The power of the legislature over villages and cities is in no way limited by the constitution, except that the legislature is required to restrict their power of taxation, contracting debts, and loaning their credit. What officers the city or village shall have is for the legislature to prescribe. Sec. 9 of art. XIII provides that all village officers whose election or appointment is not provided for by the constitution, shall be elected by the electors of such village, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. The only village officer whose election or appointment is provided for in the constitution is a justice of the peace. Sec. 15, art. VII. The town assessor and town treasurer, whose duty is to assess the property of the incorporated village, and to collect the taxes of the village, which are levied by the village authorities, are not officers of the village, and so do not come within the provisions of sec. 9, art. XIII, above cited. If the inhabitants who desire to re-

side in an incorporated village do not like the conditions which the legislature impose upon the residents of such municipal corporations, there is no compulsion upon them to assume the burdens and disabilities, and if they voluntarily do so it may be presumed that they do so because they are more than counterbalanced by the benefits to be derived from such organization.

It is undoubtedly true that ch. 40 is not perfect in all the details which should fix the relations of the village and town to each other, and it would be more satisfactory if the rights and powers of the town and village respectively as to the support of the poor, the power of the town to levy and collect taxes upon the village property for the building of bridges within the village, and other matters relating to taxation, were more definitely fixed and determined by the legislature. But we do not think the act is so imperfect as to render it void for uncertainty or obnoxious to any constitutional inhibition.

Having determined that an elector of a village incorporated under ch. 40, R. S. 1878, is not entitled to vote at the town meeting in the town from which it was taken, it is unnecessary to discuss at length the constitutionality of the law under which the village was organized. We think, however, that by holding as we do that the village is a separate and independent municipality, and that the village elector is not an elector of the town, nearly all the objections made against the constitutionality of the law by the learned counsel for the respondent are obviated. We are unable to see how the law violates the section of the constitution which requires that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Art. IV, sec. 23. The law in regard to the formation of villages applies to every town in the state. After a village is formed out of the territory of a town, what remains of the town has all the powers of any other

town in the state, and the additional right of having some of its officers perform some acts which might have been imposed upon the village officers; but this duty is required of the officers of every town out of whose territory a village is organized. The law is uniform, therefore, throughout the state, and it is possible that in time every town in the state may have a village organized within its limits. It is difficult to see how such a law violates the provision of the constitution above quoted.

*By the Court.*— The order of the circuit court is affirmed.